# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| THE DIAMOND CONSORTIUM, INC. ) <br> D/B/A THE DIAMOND DOCTOR, ET AL. ) <br>  ) <br> Plaintiffs/Counter-Defendants, ) <br>  ) <br> v.   ) <br>  ) <br> MARK HAMMERVOLD, ET AL. ) <br>  ) <br> Defendants/Counter-Plaintiffs ) <br>  ) <br> BOAZ RAMON, ) <br>  ) <br> Deponent. ) | Case No. 3:18-mc-00020 <br> Judge Aleta A. Trauger |

## MEMORANDUM

Pending before the court is an Objection (Docket No. 38) seeking review of the magistrate judge's Report and Recommendation issued on April 8, 2019 (Docket No. 37), filed by third parties Boaz Ramon and Afsoon Hagh.[1] The plaintiffs, The Diamond Consortium, Inc. d/b/a The Diamond Doctor ("The Diamond Doctor") and David Blank, have filed a Response in opposition. (Docket No. 40.) For the reasons discussed herein, Ramon and Hagh's Objection will be sustained in part.

## BACKGROUND

This matter arises from a lawsuit filed by the plaintiffs in the United States District Court for the Eastern District of Texas. (Docket No. 2-1.) The lawsuit asserts claims against a host of

---

[1] Ramon and Hagh style their filing as a "Motion for Review of Nondispositive Order of Magistrate Judge" pursuant to Local Rule 72.01(a). (Docket No. 38 at 1.) As discussed below, the magistrate judge treated the issues before it as dispositive and issued a Report and Recommendation accordingly. (Docket No. 37 at 1.) The court will therefore construe Ramon and Hagh's filing as an Objection to the magistrate judge's Report and Recommendation. (*See* Local Rule 72.02(a).)

defendants—Brian Manookian; Cummings Manookian, PLC; Mark Hammervold, and; Hammervold, PLC—related to the purported extortion of The Diamond Doctor's jewelry business. (*See id*.) In the course of litigating the Texas case, the plaintiffs issued a subpoena to depose, and direct document production from, third party Boaz Ramon. (Docket No. 1-1.) Ramon is a Nashville resident who owns and operates a jewelry retailer headquartered in Nashville. (Docket No. 1 at 2.) The subpoena called for Ramon to appear for a deposition in Nashville on December 17, 2018. (Docket No. 1-1 at 1.)

In response, Ramon filed a Motion to Quash in this court on December 11, 2018.[2] (Docket No. 1.) Hagh was Ramon's attorney on the motion, which served as the first notice to the plaintiffs' counsel that Hagh was representing Ramon. Ramon argued in the motion that the December 17 deposition date presented an undue burden because it coincided with the peak holiday sales season at Ramon's jewelry stores. (*Id*. at 2–3.) On December 14, 2018, the court referred the matter to the magistrate judge. (Docket No. 3.) Ramon did not appear for his deposition on December 17 or produce the requested documents by that date. (Docket No. 10-4 at 4.) The magistrate judge held a telephonic conference the day after Ramon's failure to appear, during which he directed counsel to meet and attempt to resolve their issues. Counsel were unable to do so. On December 28, 2018, the magistrate judge[3] denied Ramon's Motion to Quash. (Docket No. 8.) The magistrate judge ordered Ramon to appear for deposition between January 9, 2019 and January 23, 2019, and to produce all requested documents by January 7, 2019. (*Id*. at 3.) The magistrate judge specified that, if the parties were unable to agree upon a date within that window, Ramon should appear on

---

[2] Ramon's motion was filed in this court because the Middle District of Tennessee is the district where compliance with the subpoena was required. *See* Fed. R. Civ. Pro. 45(d)(3)(A).

[3] On December 27, 2018, Magistrate Judge Frensley recused himself from further proceedings in this case. (Docket No. 7.) The case was reassigned to Magistrate Judge Holmes. (*Id*.)

2

January 23, 2019 at 9:00 a.m., at a location designated by the plaintiffs' counsel. (*Id*.) Ramon's attorney, Hagh, emailed counsel for the plaintiffs, and the parties agreed that Ramon would be deposed on January 23, 2019 at 9:30 a.m., at a location provided by Hagh. (Docket No. 29-1 at 5–7.)

On January 10, 2019, the plaintiffs filed a Motion for Award of Fees and Costs. (Docket No. 9.) The plaintiffs sought $2,970.00 in attorney's fees and $958.84 in costs for Ramon's failure to appear at the December 17 deposition. (*Id*.) On January 18, 2019, the Friday before the federal three-day Martin Luther King Jr. holiday, Mark Hammervold and Hammervold, PLC (the "Hammervold Defendants") filed a Motion for Protective Order to prevent the plaintiffs from deposing Ramon on January 23. (Docket No. 11.) They argued that the scheduled deposition was after the discovery deadline in the underlying Texas case and that the Hammervold Defendants' counsel had personal obligations that prevented him from participating in Nashville on January 23. (Docket No. 11.) On January 22, 2019, the court referred all pending and future motions in the case to the magistrate judge. (Docket No. 13.) That same day, counsel for the plaintiffs traveled from Dallas, Texas to Nashville, in order to depose Ramon the following day.

Ramon and Hagh did not appear for the January 23 deposition. (Docket No. 29-3 at 2.) Instead, that day, Ramon filed a Response in opposition to the requested fees and costs stemming from Ramon and Hagh missing the first deposition. (Docket No. 12.) Ramon contended that, because counsel for the Hammervold Defendants indicated that he, too, was unavailable on the scheduled date of the first deposition (December 17), Hagh "had no reason to believe the Plaintiffs, in good faith, would proceed with the deposition." (*Id*. at 1.) Ramon further argued that Hagh's unresponsiveness to inquiries about the scheduled deposition was the result of her recent maternity leave. (*Id*. at 2.) Also on January 23, 2019, Hagh filed a Notice of Withdrawal stating only that,

3

"for good cause, she is no longer counsel of record" for Ramon. (Docket No. 14 at 1.) Hagh notified the plaintiffs of her intention to withdraw approximately an hour and a half before Ramon's scheduled deposition. (Docket No. 29 at 2.) This notification came after multiple earlier emails between Hagh and the plaintiffs' counsel, confirming the date, time, and location of the scheduled deposition. (Docket Nos. 29-1, 29-2.) Hagh made no effort to withdraw as Ramon's counsel prior to January 23, 2019.

On January 25, 2019, the plaintiffs filed a Motion for Order to Show Cause, asking the court to direct Ramon and Hagh to appear and show cause why they should not be held in contempt for failing to comply with the magistrate judge's December 28 order. (Docket No. 16.) On February 7, 2019, Hagh filed a Motion to Withdraw (Docket No. 19) and a separate Motion for Extension of Time to Respond (Docket No. 21). Hagh's basis for withdrawal was an allegedly irreconcilable conflict in representing Ramon because of purported connections between lawyers in her law firm and the underlying litigation. (Docket Nos. 19 and 19-1.) The plaintiffs contested Hagh's request (Docket No. 30) and, on February 21, 2019, filed a Second Motion for Attorney Fees and Costs, seeking attorney's fees of $5,265.00 and costs of $2,531.92 for the failure of Ramon and his counsel to appear for Ramon's second scheduled deposition. (Docket No. 28.) No response to the plaintiffs' second motion for costs and fees was filed.

On March 1, 2019, the Hammervold Defendants filed a Notice, stating that the plaintiffs had voluntarily dismissed the underlying Texas case (Docket No. 33), along with an order granting the "Unopposed Motion for Voluntary Dismissal without Prejudice" entered by the Eastern District of Texas (Docket No. 33-1.) The order of dismissal states that "[a]ll relief not previously granted is hereby denied." (*Id*.) On March 8, 2019, the magistrate judge issued her Report and Recommendation. The Report and Recommendation sets forth the magistrate judge's conclusion

4

that, while the dismissal of the underlying Texas case resolved some of the motions pending between the parties in this case, the motions for attorney's fees and other sanctions are collateral issues that remain appropriate for disposition in this court. (Docket No. 37 at 2.) The magistrate judge recommends that the plaintiffs' two motions for fees and costs be granted,[4] that the Hammervold Defendants' motion for a protective order be denied as moot, that the plaintiffs' motion for a show cause order be denied, that Hagh's motion to withdraw be granted, and that Ramon's motion for an extension of time be denied as moot. (*Id*. at 11.) On April 19, 2019, Ramon and Hagh filed their Objection. They seek review of the recommendation that the plaintiffs' two motions for costs and fees be granted.

## LEGAL STANDARD

The standard of review applicable to a party's objections to a magistrate judge's ruling depends upon whether the objections pertain to a dispositive or non-dispositive matter. If the issue is dispositive, any party may, within fourteen days after being served with a magistrate judge's recommended disposition, "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court must review *de novo* any portion of the report and recommendation to which objections are "properly" lodged. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B) & (C). An objection is "properly" made if it is sufficiently specific to "enable[ ] the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Holloway v. Palmer*, No. 16-2450, 2017 WL 4844457,

---

[4] The magistrate judge recommends that the costs and fees be awarded against Ramon and Hagh jointly and severally.

5

at *2 (6th Cir. Apr. 5, 2017); *see also Special Learning, Inc. v. Step by Step Acad., Inc.*, 751 F. App'x 816, 819 (6th Cir. 2018). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

A party may also file objections to a magistrate judge's nondispositive order within fourteen days of being served with such order, but this court's review of a magistrate judge's resolution of a non-dispositive pretrial matter is limited to determining whether the order is "clearly erroneous" or "contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "Thus, § 636(b) creates two different standards of review for district courts when a magistrate court's finding is challenged in district court. A district court shall apply a 'clearly erroneous or contrary to law' standard of review for the 'nondispositive' preliminary measures of § 636(b)(1)(A). Conversely, 'dispositive motions' . . . are governed by the de novo standard." *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) (quoting *United States v. Raddatz*, 447 U.S. 667, 673–74 (1980)). Under the "clearly erroneous or contrary to law" standard, the court is not empowered to reverse the magistrate judge's finding simply because the court would have decided the issue differently.

As noted above, Ramon and Hagh style their motion as one for review of a nondispostive order, which would limit the court's review to the "clearly erroneous or contrary to law" standard. However, under Federal Rule of Civil Procedure 54(d)(2)(D), "the court may . . . refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter." Fed. R. Civ. Pro. 54; *see Toliver v. JBS Plainwell, Inc.*, No. 1:11-CV-302, 2016 WL 165031, at *4 (W.D. Mich. Jan. 14, 2016) ("While a motion for attorney fees is, by its ordinary meaning, 'nondispositive,' the governing statute directs courts to treat the referral of such motions as it

6

would "dispositive pretrial matters."). Because such motions are "dispositive of a claim," *Massey v. City of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993), the magistrate judge correctly addressed the motions by issuing a Report and Recommendation, which is subject to "*de novo* review by the district court." *Id*. The court will thus review *de novo* the portions of the Report and Recommendation to which Ramon and Hagh have raised objections.

## ANALYSIS

Ramon and Hagh object on three grounds to the magistrate judge's recommendation that the plaintiffs' motions for fees and costs both be granted. First, Ramon and Hagh argue that the dismissal of the underlying Texas case mooted and adjudicated both of the plaintiffs' motions. Second, they argue that, even if the motions remain viable following dismissal of the Texas case, an award of fees and costs against them is improper for several reasons. The court will address each objection in turn.

**1. Dismissal of the underlying Texas case does not affect the plaintiffs' ability to recover costs and fees.**

Ramon and Hagh's first object that the plaintiffs are not entitled to any further relief stemming from the parties' dispute because the underlying Texas case has been dismissed. The magistrate judge specifically addressed the impact of the underlying case's dismissal on the plaintiffs' motions pending in this court. The magistrate judge concluded that, while dismissal resolves some of the plaintiffs' pending motions, it does not preclude consideration of the motions for attorney's fees and costs. The magistrate judge reasoned that the availability of fees and costs entails

> collateral issues that may properly be decided by this court in this proceeding notwithstanding dismissal of the underlying action. *See e.g. Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 395–98 (1990) (recognizing well established rule that a federal court may consider collateral issues of sanctions and attorney's fees after an action is no longer pending because those proceedings are independent of

7

and supplemental to the original action); *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 644–46 (6th Cir. 2006) (sanctions, including statutory and inherent sanctions, remain within the court's authority even after subject-matter jurisdiction no longer exists because of dismissal of the action).

(Docket No. 37 at 2.)

Ramon and Hagh do not challenge the authority cited by the magistrate judge for the proposition that attorney's fees may be granted after dismissal of an underlying action. Nor do they cite any case law in support of their position that the magistrate judge erred in her analysis. They rely solely on the order of dismissal issued by the district court in the Texas case, which states that "[a]ll relief not previously granted is hereby denied." (Docket No. 38-3.) Because the plaintiffs' motions for fees and costs were pending in this court when the Texas case was dismissed, Ramon and Hagh contend, the motions must now be denied as mooted and adjudicated by the Texas court, which issued the subpoena that gave rise to the motions.

The plaintiffs respond that Ramon and Hagh misapprehend the effect of the Texas court's dismissal order. They argue that the dismissal order denies only the relief that was pending before the Texas court and that the motions for attorney's fees and costs were unaffected by the dismissal order because those motions were never pending before the Texas court. Nor could the motions pending before this court be affected by an order of the Texas court, the plaintiffs contend, because the Texas court has no jurisdiction over this court's docket.

The plaintiffs' arguments are well taken. It is axiomatic that a court has no jurisdiction over motions pending before another court. *See, e.g., Balbo Corp. v. Indep. Bank*, No. CV 2014-19, 2014 WL 3715032, at *3 n.2 (D.V.I. July 28, 2014) ("[T]his Court cannot and will not consider Balbo's motions which are pending before another court . . . . This Court declines to intrude on any matter within the province of its estimable sister court."). Ramon and Hagh's contention that the Texas court adjudicated motions pending before this court is meritless.

8

Nor were the motions mooted by dismissal of the Texas case. That the Texas court issued the subpoena underlying the present dispute is irrelevant. The motions for fees and costs are, as noted by the magistrate judge, "independent of and supplemental to the original action." (Docket No. 37 at 2 (citing *Cooter & Gell*, 496 U.S. at 395–98).) This is because, as the Supreme Court explained in *Cooter & Gell*, motions for fees and costs are "not a request for a modification of the original decree" and are, therefore, not subject to the jurisdictional boundaries of the original action. *Id*. at 395. In *Sater*, the Sixth Circuit expressly extended *Cooter & Gell*'s holding to sanctions brought, as here, pursuant to a court's inherent authority.[5] 465 F.3d at 645 ("[A] court's jurisdiction to issue sanctions . . . pursuant to a court's inherent authority is ever present."). Thus, because the motions were independent from the underlying Texas case, they were not mooted by the Texas court's order of dismissal.

The magistrate judge correctly determined that dismissal of the underlying Texas case did not preclude consideration in this court of the plaintiffs' motions for fees and costs. Ramon and Hagh's objection is therefore overruled.

**2. The magistrate judge's invocation of inherent authority to award fees and costs.**

Ramon and Hagh also object to the magistrate judge's authority to award fees and costs. They provide three justifications—over the course of a single sentence, which constitutes the entirety of their objection—for why the magistrate judge lacks authority: "Ramon and Hagh further object to the award of fees and costs against them as improper given the denial of the Show-Cause Order sought against them, the lack of any finding of contempt, or other statutory or rule bases for doing so." (Docket No. 38-1 at 2.) They cite no caselaw, statutes, or rules in support.[6] However,

---

[5] The scope of the court's inherent authority is discussed in the following section.
[6] As a preliminary matter, the plaintiffs contend that the objection is fatally vague and general because it does not identify the specific portions of the Report and Recommendation to which

9

their argument incorporates the standards set forth in Federal Rule of Civil Procedure 37, which governs sanctions for parties' failure to comply with discovery orders.

Rule 37(b) addresses how sanctions for failure to obey a court order may be sought, both in the court where an action is pending and, separately, in the court where a deposition is to be taken. *See* Fed. R. Civ. P. 37(b). The rule makes clear that a court maintains enforcement authority over its own orders, independent of proceedings in a sister court. Rule 37(b)(1) governs sanctions sought in the district where a deposition is to be taken. It provides, in relevant part: "If the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court." As the Sixth Circuit has explained, "a nonparty that refuses to comply with such an order is thereby in contempt of and subject to sanctions by the court that issued the order. Thus, the Federal Rules are designed to ensure that district courts remain firmly in control of those depositions and document productions involving nonparties located in their districts." *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 444 F.3d 462, 468 (6th Cir. 2006) (internal citation omitted).

Two other provisions of Rule 37 are relevant here. Rule 37(b)(2) sets forth how sanctions for failure to obey a court order may be sought in the district where an action is pending. Rule 37(b)(2)(C) provides for payment of expenses:

> Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

---

Ramon and Hagh object. The court acknowledges that the objection's complete lack of support suggests a negligible effort on the part of Hagh. Nonetheless, the objection identifies the aspect of the Report and Recommendation to which Ramon and Hagh object—the granting of the motions for fees and costs—and, albeit minimally, their reasons for objection. Despite consisting of only a single sentence, the objection "enables the [court] to focus attention on those issues . . . that are at the heart of the parties' dispute." *Thomas*, 474 U.S. at 147. The objection is therefore compliant with Local Rule 72.02, and the court will not overrule it as deficiently vague.

Fed. R. Civ. P. 37(b)(2)(C). Rule 37(d) governs sanctions for a party's failure to attend its own deposition. Rule 37(d)(1)(A) authorizes only the "court where the action is pending" to award, on motion, attorney's fees caused by the sanctioned party's failure to attend its own deposition, unless that failure was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(d)(1)(A). The upshot of these provisions, read in conjunction, is that the rule authorizes the court in the district where a deposition is to be taken to levy sanctions for failure to obey an order via contempt of court. The court where the action is pending, in contrast, is specifically directed to award attorney's fees via the procedures set forth in Rule 37.

Ramon and Hagh's objection comes into sharper relief against the backdrop of Rule 37. The rule directs courts in districts where a deposition is to be taken toward the contempt process as the appropriate mechanism for sanctioning violations of a court order. Here, however, the magistrate judge did not find Ramon and Hagh in contempt. She recommends that the Motion to Show Cause be denied, reasoning that a finding of contempt would be superfluous in light of an award of fees and costs. (*See* Docket No. 37 at 8 n.7 ("But, again, based on the totality of the circumstances here, the court finds the award of attorney's fees and costs to be enough without resorting to a contempt proceeding.").) Ramon and Hagh object that the magistrate judge has this backwards and that the court lacks authority to award fees and costs without a predicate finding of contempt.

The magistrate judge did not rely on Rule 37 in recommending that the plaintiffs' motions for fees and costs be granted. Rather, she relied on the court's inherent authority to levy attorney's fees as sanctions. (*See* Docket No. 37 at 2–3.) "The inherent powers of federal courts are those which are necessary to the exercise of all others." *United States v. Llanez-Garcia*, 735 F.3d 483, 492 (6th Cir. 2013) (internal quotation marks omitted). "The federal courts' inherent power to

protect the orderly administration of justice and to maintain the authority and dignity of the court extends to a full range of litigation abuses." *Mitan v. Int'l Fid. Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001). The court's inherent powers include—but are not limited to—the power to punish for contempt. *Id.* (internal citations and quotation marks omitted). Another permissible sanction under a court's inherent authority is an assessment of attorney's fees. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). "[S]uch a sanction, when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature. In other words, the fee award may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Id.* (internal citations and quotation marks omitted).

In determining that no statutory or rule-based authority was required to sanction Ramon and Hagh, the magistrate judge relied upon the Supreme Court's decision in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). (*See* Docket No. 37 at 2–3) ("Sanctions imposed under statutes and rules do not 'displace[ ]' the inherent power to impose sanctions.") (citing *Chambers*, 501 U.S. at 46).) In *Chambers*, the Court made clear that courts must proceed with discretion in invoking their inherent authority, and generally should not rely on their inherent authority in situations where the Federal Rules provide an appropriate mechanism for sanctioning conduct at issue. *Id.* at 50. Critically, however, courts are not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules." *Id.* The Sixth Circuit has affirmed that there is no "wooden requirement" that courts rely on the procedures set forth in the Rules to levy sanctions. *First Bank of Marietta*, 307 F.3d at 514; *see also Metz v. Unizan Bank*, 655 F.3d 485, 491 (6th Cir. 2011) ("[W]e read *Chambers* 'broadly to permit the district court to resort to its inherent authority to sanction bad-faith conduct, even if

12

the court has not expressly considered whether such conduct could be sanctioned under all potentially applicable rules or statutes.'") (quoting *First Bank of Marietta*, 307 F.3d at 514).

Ramon and Hagh's objection is therefore unfounded if the magistrate judge correctly applied the relevant standards for a court's invocation of its inherent authority. Under governing Sixth Circuit precedent, the court must consider two factors in determining whether Ramon and Hagh's conduct is subject to inherent authority sanctions: (1) whether they engaged in conduct "that hampered the enforcement of a court order," and (2) whether they acted in bad faith. *Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 302 (6th Cir. 2016). To support a finding of bad faith, an individual's conduct "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005).

The magistrate judge did not apply the *Williamson* test in awarding sanctions pursuant to the court's inherent authority. The court finds that sanctions are not warranted under this standard for Ramon and Hagh's failure to appear for the first deposition and produce non-privileged documents. There was, at the time of the first deposition, no standing order from this court in this case. The subpoena issued from the Texas court, and the dispute found its way to this court's docket only when Ramon filed his Motion to Quash, which was not ruled upon until after the first scheduled deposition date. Courts applying the *Williamson* test have relied on the presence of a specific order directing compliance with a subpoena—not the subpoena itself—as the requisite order necessary to sustain an award of sanctions. *See, e.g., Henry v. City of Flint*, No. CV 17-11061, 2018 WL 7200682, at *7 (E.D. Mich. Dec. 6, 2018), report and recommendation adopted, No. 17-CV-11061, 2019 WL 425257 (E.D. Mich. Feb. 4, 2019) ("This Court, in its April 4, 2018 Sanctions Order, ordered Henry to desist from continued discovery violations, submit to a

continued deposition, and fully cooperate in the progression of this case. As detailed above, notwithstanding that warning, Henry again failed to comply with his discovery obligations, and an appropriate sanction is therefore warranted."). Even if a subpoena may constitute an order for purposes of the *Williamson* analysis, the Texas subpoena in this case does not, as it was issued by another court. "A federal court's inherent power concerns efforts to manage [its] own affairs, not the affairs of another sovereign's court." *Brown v. City of Upper Arlington*, 637 F.3d 668, 672–73 (6th Cir. 2011). An award of sanctions for the first missed deposition and non-production of documents is therefore unwarranted under the court's inherent authority.

For similar reasons, Ramon and Hagh are likewise not subject to contempt sanctions for the first missed deposition under Rule 37(b). To hold an individual in contempt, there must be a showing by clear and convincing evidence that the party has violated a definite and specific court order requiring the party to perform a particular act. *Elec. Workers Pension Tr. Fund of Local Union /58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003). A finding of contempt is thus inappropriate because there was no standing order by this court at the time of the first missed deposition. Ramon and Hagh's objection will therefore be sustained with regard to the plaintiffs' First Motion for Attorney's Fees and Costs.

The analysis differs for the plaintiffs' Second Motion for Attorney Fees and Costs. The magistrate judge's December 28, 2018 Order definitely and specifically required Ramon to appear for deposition by January 23, 2019, and to produce all non-privileged subpoenaed documents by January 7, 2019. (Docket No. 8 at 3.) He did neither. His failure to produce documents and appear for deposition a second time exhibits a reckless disregard that hampered the court's order. *See Vance v. Sec'y, U.S. Dep't of Veterans Affairs*, 289 F.R.D. 254, 256–57 (S.D. Ohio 2013) ("Plaintiff has displayed a reckless disregard for the effect of his conduct on [these judicial]

14

proceedings. Since the beginning of this case, Plaintiff has completely failed to cooperate in the discovery process. He has not provided Defendant with even preliminary discovery . . . . Moreover, he has failed to provide any justification for his failure to appear at his properly noticed deposition.") (internal citations and quotation marks omitted). The magistrate judge properly invoked the court's inherent authority in levying sanctions against Ramon for his defiance of the court's December 28, 2018 Order.

Hagh argues that she is not personally subject to an award of costs and fees, "as she has not failed to either do, or refrain from doing, any act ordered by any Court." (Docket No. 38-1 at 2.) Indeed, the magistrate judge's December 28, 2018 order is directed only to Ramon, not to Hagh. (Docket No. 8 at 3.) But the reach of the *Williamson* test is broad enough to encompass Hagh's actions leading up to the second scheduled deposition of Ramon. The magistrate judge specifically ordered Ramon to appear before January 23, 2019. Thereafter, Hagh communicated at length with the plaintiffs' counsel to schedule a time, date, and location of Hagh's choosing for the deposition. Hagh did not inform the plaintiffs' counsel that her client would not be appearing as agreed. Instead, an hour and half before the deposition (and after the plaintiffs' counsel had flown to Nashville from Dallas), she attempted to withdraw from her representation of Ramon in a way that did not conform with this district's local rules for withdrawal.

The magistrate judge found that this conduct "exhibits a disrespect of the court's order that cannot be disregarded." (Docket No. 37 at 10.) The court agrees. As noted by the magistrate judge, Hagh's conduct resulted in wasted expenditures of time and resources by the court and the plaintiffs' counsel. The timing and context of her actions make clear that she hampered the court's order by impeding the plaintiffs' ability to depose her client. Her last minute attempt at withdrawal, after weeks of correspondence with the plaintiffs' counsel to schedule the deposition,

constitute a reckless disregard for the effect of her conduct on the proceedings. Sister courts have deemed sanctions appropriate in comparable cases. *See Kennedy v. Allstate Ins. Co*., No. 5:17-CV-11867, 2018 WL 2994664, at *10 (E.D. Mich. May 23, 2018), report and recommendation adopted, No. 17-11867, 2018 WL 2981632 (E.D. Mich. June 14, 2018) ("The foregoing procedural history, as well as Plaintiff's counsel's failure to appear on March 6, 2018, their nonchalance about the attention given to court orders, and the lackluster explanations offered at the March 12, 2018 hearing . . . provide ample evidence of the requisite reckless disregard . . . .") (quotation marks omitted). The court finds that Hagh is subject to sanctions under the court's inherent authority.

Finally, there is a question of due process. The court construes Ramon and Hagh's objection that sanctions are inappropriate, given the recommended denial of the Show Cause order, to argue that an award of inherent authority sanctions is *per se* inappropriate without first holding a hearing. The Sixth Circuit has rejected this argument. "In this circuit, there is no requirement that a full evidentiary hearing be held before imposing sanctions. What is required is that an attorney receive fair notice and an *opportunity* for a hearing on the record." *Metz*, 655 F.3d at 491–92 (internal citations and quotation marks omitted) (emphasis in original). In *Metz*, the Sixth Circuit found that the district court's award of inherent authority sanctions against an attorney did not violate the attorney's due process rights, despite the lack of a hearing. *Id*. The court reasoned that the attorney was on notice that the opposing party was seeking sanctions, yet never requested a hearing and did not respond to the moving party's motion seeking sanctions. *Id*. at 491. Moreover, the district court had waited two months to award sanctions, giving the attorney ample time to respond. *Id*.

The reasoning of *Metz* applies with equal force here. Ramon and Hagh did not file a response to the plaintiffs' Second Motion for Attorney Fees and Costs. They have not requested

16

a hearing at any point in these proceedings, despite having several months to do so. They thus had an opportunity for a hearing that satisfies the requirements of due process. No additional process is due because the plaintiffs seek only their costs and fees incurred as a direct result of Ramon and Hagh's misconduct, rather than a punitive award. *See Haeger*, 137 S. Ct. at 1186 ("To level that kind of separate penalty, a court would need to provide procedural guarantees applicable in criminal cases, such as a "beyond a reasonable doubt" standard of proof. When (as in this case) those criminal-type protections are missing, a court's shifting of fees is limited to reimbursing the victim."). The court has reviewed the fees and costs sought and finds the amount requested in the plaintiffs' Second Motion for Attorney Fees and Costs to be an appropriate award. Ramon and Hagh's objection as to the Second Motion for Attorney Fees and Costs will be overruled.

## **CONCLUSION**

For the foregoing reasons, Ramon and Hagh's Objection is hereby **SUSTAINED in part**. Fees of $5,265.00 and costs of $2,531.92 will be assessed against Hagh and Ramon, jointly and severally, for their actions in hampering the magistrate judge's December 28, 2018 Order.

An appropriate order will enter.

ENTER this 23rd day of May 2019.

_____
ALETA A. TRAUGER
United States District Judge